# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **VIRGINIA JEFFRIES, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 70 C 3196** |
| **v.** | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| **HAROLD O. SWANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Mark Hyzy ("Hyzy"), proceeding *pro se*, brings this motion to intervene in this case pursuant to Federal Rule of Civil Procedure 24, seeking enforcement of a permanent injunction in this case and recovery of penalty payments that he alleges the Illinois Department of Human Services ("the Department") owes to him. (R. 4, Mot. to Intervene.) In its response to the motion to intervene, the Department includes a motion to dismiss several counts of Hyzy's proposed complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Hyzy's motion is granted and the Department's motion to dismiss is granted in part and denied in part.

## RELEVANT FACTS

This case began more than 45 years ago, when Virginia Jeffries filed an action under 42 U.S.C. § 1983, on behalf of a class seeking declaratory and injunctive relief. *Jeffries v. Swank*, 337 F. Supp. 1062, 1064 (N.D. Ill. 1971). The class consisted of recipients and applicants for public assistance under the Social Security Act who had not received final decisions on administrative hearings by the Illinois Department of Public Aid within 60 days of their request

for a hearing.[1] *Id.* In 1972, the district judge entered an order requiring the Department to take administrative action within those 60 days unless the applicant had requested a delay in the hearing. (R. 5, Hyzy's Mem., Ex. B.) Two years later, the court modified the order to allow the Department 90 days to take action, following a change in the Social Security Act. (*Id.*, Ex. C.) In 1975, the court required the Department to issue a $100 payment to any applicant if the 90-day deadline was not met, as well as an additional $100 payment for each additional 30 days that elapsed after the 90-day deadline. (*Id.*, Ex. D.) The Department was required to submit monthly reports detailing how many applicants were not receiving administrative decisions within 90 days and the total delays in their cases, a practice which continued until 1984. (*Id.*, Ex. B; *id.* Ex. C.) From 1984 until Hyzy filed his motion to intervene, there were no filings or proceedings in this long-settled case.[2] (R. 1, Docket.)

Hyzy was hospitalized for an illness in September 2013 and was later sent to a nursing home in October 2013. (R. 22, Compl. in Intervention ¶ 6.) After being discharged, Hyzy fell at home and was again sent to a hospital and nursing home. (*Id.*) At this time, Hyzy had neither health insurance nor any income. (*Id.* ¶ 7.) Over a period of about 16 months, Hyzy filed five applications for Medicaid benefits. (*See id.*) His first two applications were granted, although issues later arose leading Hyzy to appeal them. (R. 5, Hyzy's Mem. at 2.) His other three applications were initially denied. (R. 22, Compl. in Intervention at 4, t.1.)

Hyzy requested appeals in each of these five applications. (*Id.* ¶ 8.) The hearings for his first four applications were consolidated and held by telephone on May 19, 2015, while the fifth

---

[1] The Illinois Department of Human Services is the successor agency to the Illinois Department of Public Aid. (R. 16, Def.'s Resp. at 1 n.1.) For simplicity's sake, the Court will treat these two agencies as the same party and refer to both as "the Department."

[2] The record does not reflect why the Department stopped filing reports in 1984 or why the original plaintiffs did not challenge this cessation. However, none of the orders in this case's history placed an expiration date of any sort on the 1972 permanent injunction or closed or dismissed the case.

hearing was held on October 20, 2015. (*Id.* at 5, t.2; R. 5, Hyzy's Mem. at 2-3.) The period of delay between Hyzy filing these appeals and the dates of the hearings ranged between 138 and 363 days. (R. 22, Compl. in Intervention at 5, t.2.) The precise events of the May 19 hearings are unclear based on Hyzy's account, but he alleges that he was sworn in, gave testimony, and prevailed on one of his claims. (*Id.* ¶ 13.) For reasons not reflected in the present record, Hyzy allegedly withdrew his appeals during these hearings.[3] (R. 22, Compl. in Intervention ¶ 13; R. 16-2 ¶ 2.) After he withdrew his appeals, the Department refused to pay him any penalty payments for the delays preceding the hearings. (R. 22, Compl. in Intervention ¶ 13.) The fifth appeal was decided in Hyzy's favor, and the Department issued a $200 penalty payment to him on January 28, 2016. (R. 16-2 at 9-10; R. 16-3 at 2.) Although the delay between Hyzy filing his appeal and the final administrative decision totaled 209 days, the Department alleges that 81 days of this time resulted from Hyzy's own request for an extension. (R. 16-2 at 3.)

Hyzy filed his motion to intervene on September 3, 2015. (R. 4, Mot. to Intervene.) In March 2016, the Department filed a response opposing Hyzy's motion. (R. 16, Def.'s Resp.) The Department argued that Hyzy's claims were moot, as he voluntarily withdrew his first four appeals and was allegedly paid appropriately for the delay of his fifth appeal. (*Id.* at 3-5.) Further, the Department argued that Hyzy's motion to intervene should be denied as he had not provided a pleading to support his motion in accordance with Federal Rule of Civil Procedure 24(c). (*Id.* at 5-6.) In his reply, Hyzy argued that the Department was required to pay him for hearing delays even if he later withdrew those appeals, and thus withdrawing the appeals did not

---

[3] The Court is puzzled by Hyzy's claim that he both prevailed on one of the four May 19 appeals and yet also withdrew all four during the hearing. Hyzy states that this successful claim was confirmed in a notice approving Medicaid coverage dated September 15, 2015. (*Id.* ¶ 15 n.3.) He has not included this notice with any of his filings, however, and the Department claims that it issued a notice of withdrawal that served as the final administrative decision in this appeal. (R 16-2 at 7.) While this factual peculiarity could become relevant at a later stage in this litigation, the Court need not settle this issue for purposes of ruling on the present motion.

moot his case. (R. 17, Hyzy's Reply at 3.) He also contested whether he had been paid enough for the delay on his fifth appeal. (*Id.* at 4-5.) Hyzy acknowledged his failure to provide a Rule 24(c) pleading, but requested that the Court allow him to cure his inadvertent and good-faith error. (*Id.* at 6-7.)

On April 1, 2016, the *Jeffries* class ("the Class") filed its response to Hyzy's motion to intervene through its original counsel. (R., Original Pls.' Reply 18.) The Class argued that the Department's response suggested an incorrect reading of the orders in the underlying *Jeffries* litigation. (*Id.* at 4.) Under the Class's interpretation, the *Jeffries* permanent injunction requires that the $100 penalty payment is due as soon as the Department has gone beyond the 90-day time limit, regardless of whether the appeal is withdrawn. (*Id.* at 5.) The Class raised concerns that the Department may be encouraging applicants to withdraw their appeals without informing them of the Department's policy. (*Id.*) The Class requested that this Court enter and continue Hyzy's motion and require the Department to submit a report detailing those cases in which appeals were not decided within 90 days, those cases in which appeals were withdrawn after the 90-day period, and those cases in which the penalty payments were issued in accordance with the *Jeffries* permanent injunction. (*Id.* at 5-6.)

On May 26, 2016, this Court issued an order granting Hyzy leave to file a Rule 24(c) pleading setting forth any claims on which Hyzy seeks to proceed. (R. 21, Order at 1-2.) The Court also required the Department and the Class to respond, including information regarding the Department's current policies governing hearing delays. (*Id.* at 2.)

Hyzy, still proceeding *pro se*, filed his proposed pleading on June 16, 2016. (R. 22, Compl. in Intervention.) Although it is at times unclear, Hyzy's proposed complaint seeks relief on several grounds. First, Hyzy seeks relief under 42 U.S.C. § 1983, alleging that the

Department's failure to hold his hearings within 90 days infringed his due process and equal protection rights, as well as the Supremacy Clause of the U.S. Constitution and the Social Security Act and its relevant regulations. (*Id.* ¶¶ 20-33.) He also brings several claims based on the Department's alleged violations of the *Jeffries* orders by failing to hold his hearings within 90 days, failing to implement a favorable decision within 90 days, failing to pay him the penalty payments for those delays, and improperly calculating the delay in his fifth appeal. (*Id.* ¶¶ 45-81.)

The Department's response, filed July 29, 2016, argues that most of Hyzy's claims are unavailing and that any remaining claims do not entitle him to intervene in the present case. (R. 26, Def.'s Suppl. Resp.) First, the Department argues that Counts 2 and 3 of the proposed complaint, which assert claims based upon "the Applicant's rights under the Supremacy Clause," (R. 22, Compl. in Intervention ¶¶ 33, 38), fail because the Supremacy Clause does not grant any individual rights, (R. 26, Def.'s Suppl. Resp. at 2). Second, the Department claims that all counts based on alleged violations of the *Jeffries* orders will be mooted by the Department's voluntary payment to Hyzy of the amount that he calculates is due to him. (*Id.* at 2-4.) The Department is careful to clarify that this offer to compensate Hyzy is not an admission that he is entitled to these payments, but it asserts that its offer to make the requested payments removes any personal stake that Hyzy has in the litigation. (*Id.* at 4.) Third, the Department argues that Hyzy has no basis to intervene in the present case because he does not seek to change the underlying *Jeffries* orders and the Department's offer to pay moots his individual claims. (*Id.* at 5-7.) The Department's response also describes the application process for benefits covered by the *Jeffries* orders, noting in particular that:

> The Department has and continues to pay appellants under the *Jeffries* Orders where appropriate. The Department pays an appellant where there is a

payable Final Administrative Decision issued. The Department considers a payable Final Administrative Decision to be one where a Hearing Officer conducts and completes a hearing concerning an assistance appeal, and writes a recommended decision which is subsequently adopted by the Secretary of DHS. A case which is [disposed] of in any other manner (for instance, a withdrawal by the appellant), is not considered by the Department to be subject to a *Jeffries* payment.

(*Id.* at 11.) The Department also notes that there is not "a separate enforcement mechanism that an appellant may use to contest *Jeffries* payments," though "an appellant may pursue judicial review of any Final Administrative Decision through the Circuit Courts" of Illinois. (*Id.* at 12.)

Hyzy filed a reply responding to these arguments on August 10, 2016. (R. 28, Hyzy's Reply.) Hyzy's reply to the Supremacy Clause argument is unclear, but appears to follow two principle lines of argument. First, he seems to argue that because the Department acted "under color of state law" in failing to hold his hearings on time, its actions violate the Supremacy Clause by failing to comport with the Social Security Act's 90-day requirement. (*Id.* at 2.) Second, he argues that the district court already decided that failing to hold hearings violated the Supremacy Clause in the original *Jeffries* litigation, and thus issue preclusion bars its relitigation. (*Id.* at 2-3 (citing *Jeffries*, 337 F. Supp. at 1065).) Regarding the Department's argument that his claims are moot, Hyzy replies that he has rejected its settlement offer and no further negotiations are underway. (*Id.* at 3.) He notes that the U.S. Supreme Court held in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), that a rejected settlement offer does not moot a plaintiff's case, and he further observes that the Department's settlement offer understates his requested actual damages and ignores his requested compensatory and punitive damages. (*Id.* at 3-4.) Finally, he contends that intervention is appropriate because he intends to enforce the *Jeffries* orders as a third-party beneficiary and seek the appropriate compensation under the orders and through his other causes of action based on the same body of law. (*Id.* at 7-9.)

The Class filed a response on August 16, 2016, in which it supports Hyzy's intervention in the case. (R. 30, Original Pls.' Suppl. Resp. at 3.) Even if Hyzy's claims were found to be moot or his motion to intervene were denied, the Class argues that it would retain an interest in ensuring that the Department continues to comply with the *Jeffries* orders. (*Id.*) Accordingly, the Class asks this Court to determine whether the *Jeffries* permanent injunction allows the Department to avoid paying the $100 per month penalty if applicants withdraw their appeals and, if so, what notice must be given to the applicants to ensure that the withdrawal is knowing and voluntary. (*Id.* at 4.) The Class argues that the permanent injunction requires that the payment is due as soon as the Department has exceeded the 90-day time limit and that, even if the Department's interpretation prevails, applicants must receive written notice of their rights under *Jeffries* and of the consequences of withdrawal. (*Id.* at 5, 7-8.)

## LEGAL STANDARD

Rule 24 provides two possible paths for intervention, intervention of right and permissive intervention, that may be pursued by a timely motion. FED. R. CIV. P. 24. "The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797 (7th Cir. 2013). Courts should consider four factors to determine whether a motion is timely: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Id.* at 797-98 (citation omitted). The determination whether a motion is timely is "committed to the sound discretion of the district judge" and "is made under the totality of the circumstances." *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985).

Under Rule 24(a)(2), a court must allow intervention of right to any movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). Under Rule 24(b), a court may, in its discretion, allow a movant to intervene if he "has a claim or defense that shares with the main action a common question of law or fact" if it will not "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b). The Court must bear in mind that because Hyzy is proceeding *pro se*, his filings are entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## ANALYSIS

### I.      Motion to Dismiss

In addition to opposing Hyzy's motion to intervene, the Department also challenges several of the counts of his proposed pleading. The Department argues that Counts 5-8 are moot and that Counts 2 and 3, seeking relief under 42 U.S.C. § 1983 for violations of the Supremacy Clause, are facially deficient. (R. 26, Def.'s Suppl. Resp. at 2-4.)

"A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (alterations and citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, the Court must accept the factual

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016). However, the Court "need not accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014) (citation and internal quotation marks omitted).

In deciding a Rule 12(b)(6) motion, the Court may consider the complaint itself, as well as "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citation omitted). Courts may take judicial notice of public court records without converting the motion to dismiss into a motion for summary judgment. *See White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016).

## A.     Mootness

In its supplemental response, the Department states that "[w]hile the Department believes that a contest exists with respect to this matter, it has decided to voluntarily remit payment to Hyzy in the amount of $3,200, which Hyzy has calculated in his Complaint as the remaining amount allegedly owing to him." (R. 26, Def.'s Suppl. Resp. at 4.) It argues that because the *Jeffries* orders fix the amount allegedly owed to him, its payment of this sum "either moots, or alternatively, removes the controversy from Hyzy's suit, at least with respect to the counts founded on *Jeffries*." (*Id.*) Hyzy responds that he has already rejected this settlement offer, and that under *Gomez*, rejected settlement offers do not moot a plaintiff's case. (R. 28, Hyzy's Reply at 3.) Hyzy also disputes both the Department's calculation of the amount he is still allegedly owed under the *Jeffries* orders and the Department's failure to substantively address his claims for compensatory and punitive damages. (R. 28, Hyzy's Reply at 4.)

Based on the record before this Court at this time, Hyzy's Counts 5-8 are not moot under *Gomez*. In relevant part, the U.S. Supreme Court held in *Gomez* that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Gomez*, 136 S. Ct. at 672. Following "basic principles of contract law," the Supreme Court found that even a settlement offer for full statutory damages, "once rejected, ha[s] no continuing efficacy" because the plaintiff "gained no entitlement to the relief [the defendant] previously offered." *Id.* at 671. "In short, with no settlement offer still operative, the parties remain[] adverse; both retain[] the same stake in the litigation they had at the outset." *Id.* at 670-71. The Supreme Court explicitly reserved judgment on "whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." *Id.* at 672. Several courts have already found that such action does moot claims for damages. *See, e.g.*, *Gray v. Kern*, 143 F. Supp. 3d 363, 367 (D. Md. 2016) ("[A] measure which makes absolutely clear that the defendant will pay the complete relief the plaintiff can recover and that the plaintiff will be able to receive that relief will moot the issue in controversy."); *Leyse v. Lifetime Entertainment Svcs., LLC*, --- F. Supp. 3d ---, 2016 WL 1253607, at *2 (S.D.N.Y. Mar. 17, 2016) ("[O]nce the defendant has furnished full relief, there is no basis for the plaintiff to object to the entry of judgment in its favor. A plaintiff has no entitlement to an admission of liability[.]"); *see also Fauley v. Royal Canin U.S.A., Inc.*, 143 F. Supp. 3d 763, 765 (N.D. Ill. 2016) (noting the Supreme Court's "refusal, in [*Gomez*], to 'place the defendant in the driver's seat' of the litigation with a 'gambit' designed to 'avoid a potential adverse decision, one that could expose it to damages a thousand-fold larger than' the payment it proposes to make in plaintiff's favor" (quoting *Gomez*, 136 S. Ct. at 672)).

There is currently no evidence in the record indicating that the Department has actually provided Hyzy with the relief he seeks, however, so this Court need not take sides on this currently unresolved question of law. For the same reason, the Court need not decide at this time whether Hyzy's request that this Court enjoin the Department to follow the allegedly violated *Jeffries* orders would preserve a controversy as to one or more of these claims even in the event of full payment. (R. 22, Compl. in Intervention at 15.) Because the Department's settlement offer was rejected, Hyzy's Counts 5-8 are not currently moot under *Gomez*.

## B. Supremacy Clause

The Department argues that Hyzy does not allege any violation of the Supremacy Clause and thus his Counts 2 and 3 fail to state a claim. The Supremacy Clause does not provide any federal rights itself, but only accords federal rights priority when they come into conflict with state laws. (R. 26, Def.'s Suppl. Resp. at 2.) Because Hyzy does not allege that any state laws conflict with any of his federal rights, the Department argues that his Supremacy Clause claims under Section 1983 cannot proceed. (*Id.*) Hyzy responds that the district court held that the original plaintiffs stated a claim under Section 1983 for a violation of the Supremacy Clause in this case's earlier history. (R. 28, Hyzy's Reply at 2 (citing *Jeffries*, 337 F. Supp. at 1065).) He further argues that the district court in this case's earlier iteration decided the Supremacy Clause issue, meaning that issue preclusion bars the Department from challenging this claim. (*Id.*)

This case's earlier history notwithstanding, Hyzy does not allege any facts supporting a claim for violations of the Supremacy Clause. The Supremacy Clause does not confer a private right of action for individual plaintiffs like Hyzy. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) (observing that the Supremacy Clause "certainly does not create a cause of action"). Further, although Hyzy is correct that the earlier course of litigation in this case

involved a Supremacy Clause issue, this was based upon the conflict between the then-existent Illinois statute providing the Department with as much time as it needed to dispose of claims in contravention of the Social Security Act's more categorical time limit for holding hearings. *See Jeffries*, 337 F. Supp. at 1064-65. The Court found this statute to be invalid to the extent that it was inconsistent with the Social Security Act. (R. 5, Hyzy's Mem., Ex. B.) In the present case, however, the Department does not operate under this statute or any other state law that is inconsistent with federal law. Instead, Hyzy takes issue with the Department's interpretation and application of the *Jeffries* orders themselves. The Department's conduct, while allegedly inconsistent with the requirements of the Social Security Act as interpreted in the *Jeffries* orders, is based in policy stemming from those orders. Because the Supremacy Clause itself is "not a source of any federal rights" and only "secure[s] federal rights by according them priority whenever they come in conflict with state law," a case such as this one where there is no challenged state law does not implicate the Supremacy Clause. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 982 (7th Cir. 2012) (citations omitted). Because Hyzy does not allege the existence of any state law inconsistent with the Social Security Act but only a Department policy at odds with the permanent injunction issued in the earlier history of this case, Hyzy's Counts 2 and 3 fail to state a plausible claim for relief. Accordingly, these counts are dismissed.

## II.    Motion to Intervene

The Court finds that Hyzy's motion to intervene was timely and that he is entitled to intervene as a matter of right at the post-judgment stage to enforce the permanent injunction. Further, even if he did not have the right to intervene under Rule 24(a), the Court would exercise its discretion in permitting him to intervene under Rule 24(b).

**A.    Timeliness**

Although no party directly challenges whether Hyzy's motion was filed in a timely manner, the Court must determine whether it meets this threshold requirement. In his motion, Hyzy alleges that he first became aware of the *Jeffries* orders in December 2014 through a posting on the Illinois Legal Aid website describing the case and its requirement of penalty payments for delayed hearings, though it did not provide the orders themselves. (R. 5, Hyzy's Mem. at 5.) After his hearings on May 19, 2015, Hyzy claims that he awaited his *Jeffries* payments, and that when they did not arrive he inquired with the Department about them. (*Id.* ¶ 4.) Learning on July 20, 2015, that the Department would not issue penalty payments to him, Hyzy filed an Illinois Freedom of Information Act request for copies of the *Jeffries* orders on July 29, 2015, and received them on August 5, 2015. (*Id.*) He filed his motion to intervene in this Court on September 3, 2015. (R. 4, Mot. to Intervene.)

The Court finds that Hyzy filed his motion to intervene in a timely manner. First, the Court observes that, although Hyzy was vaguely aware of the *Jeffries* orders since December 2014, he filed his motion within two months of becoming aware that the Department would not issue *Jeffries* payments to him and within one month of receiving and reviewing the *Jeffries* orders themselves. The Court finds that the delay between Hyzy's knowledge that he had an interest in this case and his actual filing was negligible. The original parties here will suffer no prejudice from the delay, as this case has been dormant for over thirty years, and Hyzy's intervention would not upset any litigation in progress. Because he does not seek to rewrite the *Jeffries* orders, there is no risk that his post-judgment enforcement of the permanent injunction will negatively impact the interests of the original parties. *Compare People Who Care v.*

*Rockford Bd. of Educ.*, 68 F.3d 172, 176-77 (7th Cir. 1995) (finding intervention untimely when the original parties would be prejudiced because they "have been formulating remedial programs, and funding for these programs, literally for years"), *with South*, 759 F.2d at 612 (finding intervention timely when the original parties were not prejudiced by intervenor's intent to enforce consent decree and intervenor only recently learned his rights were impacted).

Further, Hyzy would suffer prejudice if he were not allowed to intervene. Even if Hyzy could file a new suit in his own name, the Seventh Circuit has found "significant" prejudice where a third-party beneficiary of a consent decree sought intervention even though he could pursue individual actions, noting that "such a suit would be costly" and "would result in further delays." *South*, 759 F.2d at 612 n.2; *see also City of Chi. v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 985 (7th Cir. 2011) ("[T]he possibility that the would-be intervenor if refused intervention might have an opportunity in the future to litigate his claim has been held not to be an automatic bar to intervention."). Finally, the Court finds that unusual circumstances support intervention in this case, including the efficiency of potentially avoiding a multiplicity of suits based on differing interpretations of the *Jeffries* orders. *See South*, 759 F.2d at 612-13 ("[I]t was appropriate for the district judge to consider as an 'unusual circumstance' the desirability of avoiding a multiplicity of lawsuits.").

The fact that this case is 46 years old and has not been active since 1984, while unusual, does not itself affect the determination of Hyzy's timeliness.[4] "The timeliness factor is essentially a reasonableness inquiry, requiring potential intervenors to be reasonably diligent in learning of a suit that might affect their rights, and upon learning of such a suit, to act to intervene reasonably promptly." *People Who Care*, 68 F.3d at 175. At least one court in this District has previously allowed intervention in a long-disposed case where the requirements under Rule 24 are otherwise met. *See Green v. Sielaff*, No. 71 C 1403, 1992 WL 175511 (N.D. Ill. July 23, 1992) (granting motion to intervene in a case filed in 1970 when a 1976 permanent injunction was allegedly contradicted by a 1987 regulation). For these reasons, the Court finds that Hyzy's motion was timely for purposes of Rule 24.

### B. Intervention of Right

Even if his motion is timely, to intervene as a matter of right Hyzy still must show that he meets all the requirements of Rule 24(a)(2). *Sokaogon Chippewa Cmty. v. Babbit*, 214 F.3d 941, 946 (7th Cir. 2000) ("Intervention of right will not be allowed unless all requirements of the Rule are met."). In short, he must establish that he claims an interest relating to the property or transaction that is the subject of the action, that the disposition of the action may as a practical

---

[4] In addition, this Court still has jurisdiction to enforce the permanent injunction in this case despite its unusual age. While no party briefed the issue, this Court must *sua sponte* satisfy itself that it has jurisdiction. *Evergreen Square of Cudahy v. Wis. Housing & Econ. Dev. Auth.*, 776 F.3d 463 (7th Cir. 2015) ("[F]ederal courts are obligated to inquire into the existence of jurisdiction *sua sponte*[.]"). The permanent injunction itself states that "[t]his Court shall retain continuing jurisdiction over this cause for all purposes," and neither the injunction nor any subsequent order in the case set an expiration date. (R. 5, Hyzy's Mem., Ex. B.) This Court does not lack jurisdiction to enforce the order simply because many years have passed. *See Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001) ("[T]he age of the case . . . does not provide a basis for declining to enforce an existing order of the court. Although not all injunctions operate in perpetuity, a district court shall enforce an injunction until either the injunction expires or the court determines that the injunction should be modified or dissolved.").

matter impair or impede his ability to protect his interest, and that the existing parties are not adequate representatives of his interests. *See id.* at 945-46.

The Department only explicitly challenges whether Hyzy's interests would be impaired by the disposition of this case. (R. 26, Def.'s Suppl. Resp. at 5.) It argues that, because Hyzy does not seek to amend the *Jeffries* orders and could bring his claims under another lawsuit, his interests are unaffected by the ability to intervene in this action. (*Id.* at 5-6.) Hyzy responds that the *Jeffries* orders determine his right to relief, that the earlier stages of this litigation settled questions of fact and law central to his claims, and that all of his claims fall within the scope of the *Jeffries* orders. (R. 28, Hyzy's Reply at 7-8.)

The Court finds the Department's argument unconvincing. In part, this is because the Department neglects the essence of Hyzy's claim. The Department puts much emphasis on how Hyzy does not wish to amend the *Jeffries* orders and suggest that he thus does not have an interest in the disposition of this case; however, the true disagreement between the parties here relates to the *meaning* of the *Jeffries* orders. Hyzy contends that the orders require a payment for a delayed hearing regardless of what happens at that hearing, (R. 28, Hyzy's Reply at 6), while the Department's position is that it only must pay applicants with delayed hearings when their hearings lead to a decision adopted by the Department's Secretary, (R. 26, Def.'s Suppl. Resp. at 11). If Hyzy is correct about what the *Jeffries* orders stand for, then he may be entitled to the penalty payments he was not given, as well as various other damages under alternative causes of action based on the Department's failure to pay him. If the *Jeffries* orders permit the Department to deny penalty payments when appeals are withdrawn at the hearing, as the Department interprets them, then Hyzy likely would not be entitled to any damages at all. What the orders in this case mean, and how far they stretch, is precisely the threshold issue for any of Hyzy's

claims, whether he brings them in this case or in a separate suit.[5] Accordingly, the Court finds

that Hyzy has an interest in enforcing the post-judgment permanent injunction in this case and

that the disposition of this case may impair his ability to protect that interest. *See Meridian*

*Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982) ("The existence

of 'impairment' depends on whether the decision of a legal question involved in the action would

as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding.").

 Additionally, the Seventh Circuit has previously permitted intervention of right in

circumstances very similar to the present case. In *South v. Rowe*, 759 F.2d 610, Illinois state

prison officials entered into a consent decree to settle litigation with a former prisoner, requiring

among other things that the Sheridan Correctional Center provide access to and certain materials

in its prison law library. *Id.* at 611. Two years later, one day before the expiration of the district

court's jurisdiction for the purpose of enforcing the consent decree, another prisoner filed a

motion to intervene. *Id.* This prisoner, Radick, alleged that the prison had not been complying

with the consent decree in various ways, so he sought to enforce the decree and extend the

court's jurisdiction over it. *Id.* at 611-12. The Seventh Circuit found that "Radick, as a current

inmate-user of the library, was an intended third-party beneficiary of the consent decree." *Id.* at

612. Because the original plaintiff was no longer an inmate when the decree was negotiated, "the

only explanation for the decree's continued regulation of the library was to benefit current and

future inmates who could avail themselves of the decree's enforcement provisions as third-party

beneficiaries." *Id.* The court found that this fact satisfied the interest and impairment

---

[5] Hyzy is clear that he only seeks enforcement of the *Jeffries* orders and not to amend or overturn them. (R. 22, Compl. in Intervention at 14-16.) Because Hyzy only seeks such forward-looking relief, the Court treats his motion as a motion to intervene for a limited purpose, namely to enforce the post-judgment permanent injunction. *See, e.g.*, *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 926 (N.D. Ill. 2012) (granting motion to intervene for a limited purpose). The Court will not reopen those issues decided in the underlying litigation.

requirements of Rule 24(a)(2), and that Radick's interests were not adequately represented by existing parties because the original plaintiff was "no longer an inmate with an incentive to monitor and enforce the decree." *Id.*

The present case is on all fours with *South*. Hyzy is an intended third-party beneficiary of the *Jeffries* orders. Although it is difficult to be sure whether all of the original *Jeffries* plaintiffs had received their hearings by the time the original injunction was ordered, this Court supervised the Department's compliance with the permanent injunction for approximately 12 years after it was entered. (*See* R. 1, Docket.) The Department was responsible for filing reports detailing how many delayed hearings were pending until August 1984, long after the original plaintiffs had received their hearings and appropriate penalty payments. (*See id.* at 22.) Further, when the penalty payments were imposed in 1975, the order specifically provided for each recipient "whose appeal the defendants are or first become in violation . . . of this Decree after May 5, 1975." (R. 5, Hyzy's Mem., Ex. D.) Just as in *South*, the only explanation for the Court's continued regulation of the Department's practices was to benefit current and future applicants who could rely on the permanent injunction's enforcement of the Social Security Act's hearing deadline. As an intended third-party beneficiary arguing that the Department is not complying with the *Jeffries* orders, Hyzy satisfies the interest and impairment requirements of Rule 24(a)(2). And just as in *South*, the original plaintiffs are no longer monitoring and enforcing the decree, so Hyzy's interests are not being adequately represented by the existing parties.[6]

---

[6] Counsel for the original plaintiffs has filed two briefs in response to Hyzy's motion. (*See* R. 18; R. 30.) However, the original plaintiffs themselves are no longer involved in this case, and counsel for the original plaintiffs appears to have learned of the Department's alleged violations of the *Jeffries* orders through receiving notice of this motion to intervene. While the Court commends counsel for responding on behalf of the original class, the Court finds no indication that any original plaintiff has any interest in the present enforcement of this permanent injunction.

The Department argues that *South* is distinguishable from the present case, as Radick intervened "with the purpose of passing the torch on a collective issue" while Hyzy "seeks to pursue his own purported individual cause of action." (R. 26, Def.'s Suppl. Resp. at 6.) It suggests that, because Hyzy seeks his own damages and does not desire to affect the *Jeffries* orders, *South*'s "passing the torch" justification does not apply to Hyzy. (*Id.*) The Court fails to see the distinction between these two situations. Just as in *South*, where Radick sought to require compliance with the consent decree as it existed, Hyzy seeks to *enforce* the *Jeffries* orders even if he does not mean to change them. The fact that Hyzy also has claims for individual damages does not preclude him from intervening to enforce the *Jeffries* orders, but instead it establishes that he has standing to intervene in the case. *See Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571-72 (7th Cir. 2009) (discussing relationship between standing and the interest required to intervene and finding that an intervenor must have a direct interest in the outcome of the suit and must "be someone whom the law on which his claim is founded was intended to protect"). Because Hyzy seeks to ensure the Department's compliance with the *Jeffries* orders as an intended third-party beneficiary and his individual claims all rely on establishing that the Department violated the *Jeffries* orders in his case, the Court finds that he satisfies Rule 24(a)(2)'s interest and impairment requirements.

Because Hyzy filed a timely motion to intervene, he has an interest in the subject matter of this case, the disposition of this case threatens to impair his right to relief, and the existing parties do not adequately represent his interests, he is entitled to intervene in this case at the post-judgment stage under Rule 24(a)(2).

### C.   Permissive Intervention

Even if Hyzy were not entitled to intervene under Rule 24(a)(2), this Court would permit him to intervene at the post-judgment stage to enforce the permanent injunction under Rule 24(b)(1)(B). The parties devote very little attention to the question of permissive intervention in their briefs,[7] but the history of this case and Hyzy's claims support granting Hyzy permission to intervene.

Hyzy's claims share at least one common question of fact with the underlying case here: Is the Department fully complying with the permanent injunction originally issued in 1972 and the penalty payments imposed in 1975? The suit brought by the original plaintiffs focused on different law and facts, mainly whether the Illinois statute conflicted with the Social Security Act, than Hyzy's claims, which center on whether the Department complied with the obligations imposed by the permanent injunction and not the Social Security Act itself.[8] *See Jeffries*, 337 F. Supp. at 1064-1066. However, the original suit persisted for approximately nine years following the court imposing penalty payments for late hearings. (R. 1, Docket.) During this period, the Court received monthly reports from the Department detailing how many applicants were suffering delayed hearings. (*Id.*) Although the initial round of litigation may not have centered on penalty payments, the greater portion of this case's duration focused solely on ensuring that the

---

[7] The Department, for instance, provides only one argument against permissive intervention: that Hyzy's claims, and thus any common questions of law or fact, are mooted by its settlement offer. (R. 26, Def.'s Suppl. Resp. at 6-7.) While the question of mootness is addressed in greater detail above, the Department offers no argument addressing the requirements for permissive intervention set forth in Rule 24(b).

[8] The Department's failure to provide Hyzy with penalty payments, allegedly in violation of the permanent injunction, establishes the standing that is necessary for intervention in a closed case under Rule 24(b) pursuant to the law of this Circuit. *See Bond v. Utreras*, 585 F.3d 1061, 1068-1072 (7th Cir. 2009) ("[W]hen a third party seeks intervention under Rule 24(b) . . . in a case or controversy that is no longer live . . . the intervenor must meet the standing requirements of Article III in addition to Rule 24(b)'s requirements for permissive intervention." *Id.* at 1072.). As he allegedly did not receive payments in which he personally had a "legally protected interest," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), leading to a concrete economic harm, Hyzy suffered an injury-in-fact that is attributable to the Department's conduct and is likely to be redressed by a favorable judicial decision. *Id.* at 1547-49.

Department was holding timely hearings and paying applicants who experienced delays beyond those permitted by the Social Security Act. Given Hyzy's intention to enforce the *Jeffries* orders and the great effort that was expended in enforcing the *Jeffries* orders in this case, the Court finds that his claims share a sufficient nexus with the underlying case to warrant permissive intervention. Because permitting Hyzy to intervene at the post-judgment stage would also not in any way delay or prejudice the adjudication of the original parties' rights, which were adjudicated and settled more than 40 years ago, the Court would allow Hyzy to intervene under Rule 24(b) if he did not have the right to intervene under Rule 24(a)(2).

## CONCLUSION

For the foregoing reasons, Hyzy's motion to intervene (R. 4) is GRANTED for the limited post-judgment purpose of enforcing the *Jeffries* orders, as set forth in his proposed pleading. The Department's motion to dismiss (R. 26) is GRANTED IN PART AND DENIED IN PART. Counts 2 and 3 of Hyzy's complaint in intervention (R. 22) are DISMISSED.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: September 30, 2016**